# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JAMES R. RUSSELL**                             **CIVIL ACTION**

**VERSUS**                                        **NO. 18-660-BAJ-EWD**

**JOSE F. BONILLA ESCOBAR,
ET AL.**

     Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

     In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

     ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

     Signed in Baton Rouge, Louisiana, on June 3, 2019.

                                                             **ERIN WILDER-DOOMES**
                                                             **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JAMES R. RUSSELL     CIVIL ACTION

VERSUS     NO. 18-660-BAJ-EWD

JOSE F. BONILLA ESCOBAR,
ET AL.

### MAGISTRATE JUDGE'S
### REPORT AND RECOMMENDATION

Before the court is the Motion to Remand ("Motion") filed by Plaintiff James R. Russell ("Plaintiff").[1] The Motion is opposed by removing defendants Jose F. Bonilla Escobar ("Escobar") and Hallmark County Mutual Insurance Company ("Hallmark") (collectively, "Defendants").[2] For the reasons set forth herein, the undersigned recommends[3] that the Motion be denied.

**I.  Facts and Procedural Background**

This is a civil action involving claims for damages based upon the injuries allegedly sustained by Plaintiff on May 17, 2017 in St. Landry Parish, Louisiana, when Plaintiff's tractor-semitrailer was sideswiped by a tractor-semitrailer driven by Escobar, which was insured by Hallmark.[4] As a result of the accident, Plaintiff filed a Petition for Damages ("Petition") against Defendants on or about April 25, 2018 in the Nineteenth Judicial District Court for the Parish of East Baton Rouge.[5] On June 27, 2018, Defendants removed the matter to this Court asserting that

---

[1] R. Doc. 22.
[2] R. Doc. 24.
[3] The Fifth Circuit has held that "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review." *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016).
[4] R. Doc. 1-4, ¶¶ 3, 6 and 11.
[5] R. Doc. 1-4. Plaintiff also initially named "Hallmark Specialty Insurance Company" as a defendant (R. Doc. 1-4), but later voluntarily dismissed Hallmark Specialty from this proceeding without prejudice. R. Docs. 11, 25.

this Court has diversity jurisdiction under 28 U.S.C. § 1332.[6]  Specifically, the Notice of Removal alleges that Plaintiff is a citizen and domiciliary of Louisiana and Escobar and Hallmark are domiciliaries of Texas.[7]  Accordingly, the Notice of Removal established that the parties are diverse.

The Notice of Removal, referencing the Petition, alleged the following to establish the amount in controversy:

> Although the Defendants deny any liability to Plaintiff, the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff's Petition does not allege the amount in controversy falls below $75,000, as required by Article 893 of the Louisiana Code of Civil Procedure.[8]

Thus, it was not apparent from the Notice of Removal if Plaintiff's claims are likely to exceed $75,000.00.

Nor does Plaintiff's Petition contain sufficient facts to establish the amount in controversy. Therein, Plaintiff alleges that Plaintiff, the driver of the "RUSSELL 18 WHEEL VEHICLE," was at a complete stop while waiting to take a right turn into a truck stop in St. Landry Parish when he was allegedly "sideswiped" by defendant Escobar, the driver of the "BONILLA 18-WHEEL VEHICLE."[9]  As a result of this accident, Plaintiff claims that he has suffered "acute injuries to his neck, back, body as a whole and any and all other injuries to be shown upon trial of this matter" and "disabling bodily injuries."[10]  Plaintiff seeks past, present, and future compensatory damages for physical pain and suffering, mental pain, anguish, and distress, medical expenses, loss of enjoyment of life, and lost wages, as well as all other damages "which shall be proven at trial of

---

[6] R. Doc. 1, ¶¶ 6-10.
[7] R. Doc. 1, ¶¶ 7-8.  Hallmark alleges it was incorporated in, and has its principal place of business in, Texas. *Id*. at ¶ 8.
[8] R. Doc. 1, ¶ 10.
[9] R. Doc. 1-4, ¶¶ 3-7.
[10] R. Doc. 1-4, ¶¶ 6, 8.

2

this matter," legal interest, costs, and expert witness fees.[11]  Other than Plaintiff's general allegations of "acute injuries to his neck, back, body as a whole" and "disabling bodily injuries" as a result of the alleged sideswipe, Plaintiff did not provide any information regarding the actual injuries Plaintiff allegedly sustained as result of the accident.  "Courts have routinely held that pleading general categories of damages, such as 'pain and suffering, disability, lost wages, loss of earning capacity, medical expenses, etc.,' without any indication of the amount of the damages sought, does not provide sufficient information for the removing defendant to meet his burden of proving that the amount in controversy is satisfied under the 'facially apparent' test."[12]

As a result, on July 3, 2018, the undersigned *sua sponte* ordered Defendants to file a memorandum and supporting evidence, specifically concerning whether the amount in controversy requirement in 28 U.S.C. § 1332 was met.[13]  On July 10, 2018, Defendants filed their Motion to Extend Deadline to Respond to the Court's Order and sought leave to conduct discovery limited to the issue of the Court's subject matter jurisdiction.[14]  Defendants contended they were not in possession of Plaintiff's medical records or other relevant evidence as to the amount in controversy because no discovery has been conducted, and claimed that they could not properly respond to the Court's Order requiring supplemental briefing until they obtained discovery relative to Plaintiff's damages.[15]

The Court exercised its discretion and granted the Defendants' motion, giving the parties 60 days to conduct jurisdictional discovery.[16]  On September 7, 2018, Defendants filed their

---

[11] R. Doc. 1-4, ¶ 9 and p. 5.
[12] *Davis v. JK & T Wings, Inc.*, No. 11-501, 2012 WL 278728, at *3 (M.D. La. Jan. 6, 2012), and cases cited therein.
[13] R. Doc. 3.
[14] R. Doc. 4.
[15] R. Doc. 4, p. 1.
[16] R. Doc. 5 *citing Gordon v. East Skelly, LLC*, No. 13-6570, 2014 WL 2894923 (E.D. La. June 25, 2014) (granting motion to remand following limited discovery regarding the nature and extent of damages and the amount in controversy).

Memorandum on Subject Matter Jurisdiction ("Memorandum") in compliance with the Court's July 3, 2018 Order,[17] and filed Plaintiff's medical records under seal in support of their position that the amount in controversy exceeds $75,000, exclusive of interest and costs.[18] Plaintiff responded with the instant Motion.[19]

## II.    Arguments of the Parties

### A.  Defendants' Memorandum

Defendants acknowledge in their September 7, 2018 Memorandum in support of subject matter jurisdiction that, as Louisiana law does not allow Plaintiff to plead a specific amount of damages, Defendants have the burden to establish that the amount in controversy is met pursuant to 28 U.S.C. § 1446(c)(2),[20] in one of two ways:  (1) either by demonstrating that it is "facially apparent" from the petition that the claim likely exceeds $75,000, or (2) by providing "summary judgment-type" evidence relevant to the amount in controversy at the time of removal.[21]  If Defendants provide evidence to show by a preponderance that the amount is met, then the burden shifts to Plaintiff to show to a legal certainty that the amount in controversy is not met.[22]

Defendants concede that it is not facially apparent from Plaintiff's Petition that the jurisdictional minimum is met; however, Defendants contend that Plaintiff's medical bills and records, which it received during limited discovery, indicate that Plaintiff's damages will exceed

---

[17] R. Doc. 12.
[18] R. Docs. 18, 20.
[19] R. Doc. 22.
[20] 28 U.S.C.A. § 1446(c)(2) provides: "If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that--(A) the notice of removal may assert the amount in controversy if the initial pleading seeks- (i) nonmonetary relief; or (ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and (B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)."
[21] R. Doc. 12, pp. 4-5, *citing Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000), *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir. 1995), *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999), and *White v. FCI USA, Inc.,* 319 F.3d 672, 675 (5th Cir. 2003).
[22] R. Doc. 12, p. 5.

4

the jurisdictional minimum.[23] Defendants cite to the following medical evidence culled from Plaintiff's medical records:[24] (1) Plaintiff had pre-existing injuries from a prior motor vehicle accident that occurred on February 8, 2017 ("the February accident"), about three months before the accident at issue herein ("the May accident"), for which Plaintiff was already receiving chiropractic care that he continued after the May accident; (2) Plaintiff began treating with neurosurgeon Dr. Anthony Ioppolo, MD, a month after the May accident.  Dr. Ioppolo ordered cervical and lumbar MRIs on August 22, 2017, from which he noted disc bulging at L4 and L5 with foraminal stenosis, a herniated disc at C6 deforming the left ventral surface of the cord, and straightening of the normal curvature; (3) Plaintiff received epidural injections in October 2017 at C6-7 ordered by Dr. Ioppolo and performed by Dr. Sean Graham, which afforded partial relief; (4) Plaintiff received a cervical dorsal medial branch block at C5-6 and C6-7 in November 2017, which did not provide relief.  According to Defendants, "Plaintiff reported neck and lower back pain at level 8/10 which radiates to the left arm and leg and difficulty walking.  He reported heaviness and pain in neck, pain in his left hand with weakness and dropping things."[25]  Dr. Graham diagnosed cervical radiculitis and herniation of lumbar discs and cervical discs; (5) Plaintiff was referred by Dr. Ioppolo for a possible anterior cervical discectomy and fusion surgery in December 2017; (6) Plaintiff saw Dr. Oberlander in March 2018, who opined that his conditions were related to the two accidents and recommended continuing with conservative therapy but estimated that the recommended surgery would be $88,041.92.[26]  Furthermore, Defendants contend that Plaintiff's records indicate that Plaintiff has been treated with pain medication and

---

[23] R. Doc. 12, p. 5.
[24] *See* R. Doc. 20 for 459 pages of records that Defendants filed under seal and refer to *in globo*.
[25] R. Doc. 12, pp. 2-3 *citing* R. Doc. 20.
[26] R. Doc. 12, p. 3 *citing* R. Doc. 20.

5

muscle relaxers throughout his treatment and Plaintiff's past medical bills at the time of filing totaled $18,295.

In light of the foregoing, Defendants argue that, "[g]iven his alleged continuing pain and the surgery that has been recommended, it is likely that Plaintiff's medical expenses alone will exceed the amount in controversy…." Defendants also rely on Plaintiff's claim for future medical expenses and point to the estimated cost of the orthopedic surgery, which they contend is significant. Finally, Defendants assert that Plaintiff also seeks general damages for past, present, and future physical and mental pain and suffering, disability, loss of enjoyment of life, and lost income, and argue that, considering that Plaintiff has treated and continues to treat, and is seeing an orthopedic surgeon, his general and special damages will exceed the jurisdictional minimum.[27]

### B. Plaintiff's Motion to Remand

Plaintiff seeks remand based on the argument that Defendants have not sustained their burden to prove that the amount in controversy is met by a preponderance of the evidence. Plaintiff avers that, while it is true that Plaintiff is a candidate for a cervical fusion surgery and has incurred past medical expenses of $18,295, Defendants have not established a causal connection between the surgery recommendation or those medical expenses and the *May* accident. Rather, Plaintiff argues that Plaintiff sustained cervical and lumbar injuries as a result of the February accident and began treatment in March 2, 2017 with Dr. Thomas Rathmann, at which time he complained of pain in those areas with muscle spasms as well as headaches. Plaintiff cites to the following medical evidence, which predates the May accident by one week: Plaintiff had an MRI of the lumbar and cervical spines on May 10, 2017, which, according to Plaintiff, revealed "straightening of the lumbar lordosis with subligamentous annular bulging at L2-4, L4-5, and L5-S1," and "a left

---

[27] R. Doc. 12, p. 3.

6

paracentral disc herniation at C5-6 measuring 4.2 mm and a left paracentral subligamentous disc herniation at C6-7 measuring 3.5 mm."[28] Further, annular tearing was noted, and an abnormal T2 signal was noted on the cervical MRI, which "indicat[es] edema and possible disc hemorrhaging," and Plaintiff was subsequently referred to Dr. Ioppolo for evaluation.[29] Therefore, at the time of the May accident, Plaintiff was already treating with Dr. Rathmann and he continued to treat with Dr. Rathmann. After the May accident, Plaintiff underwent several MRI scans, including the August 22, 2017 scan noted by Defendants, which continued to reveal the bulging at L4-5 and L5-S1 and the disc herniation at C6-7 that had been identified prior to the May accident as referenced above.[30]

Plaintiff argues that, while Defendants rely on Plaintiff's past medicals of $18,295 and Dr. Ioppolo's surgery recommendation to establish the amount in controversy, Defendants only assume that such evidence is causally related to Plaintiff's claims at issue in the instant matter.[31] However, according to Plaintiff, the medical evidence does not support that assumption because the medical records do not show if the injuries were related to the February accident, the May accident, or a combination of both, and even if Plaintiff's treatment was necessitated by a combination of both, the records do not attribute the injuries to the respective accidents. Plaintiff argues that Defendants "have not stipulated that the loss subject to this litigation is the causal factor for Mr. Russell's surgical recommendation; on the contrary, it is anticipated that the defendants will deny causation and further the relatedness of the surgery once removal to federal court has been achieved."[32] Plaintiff thus contends that, until medical testimony, and not mere medical

---

[28] R. Doc. 22-1, p. 3.
[29] R. Doc. 12, pp. 3-4.
[30] R. Doc. 22-1, p. 4.
[31] R. Doc. 22-1, p. 4.
[32] R. Doc. 22-1, pp. 4-5.

7

records, establishes the causal relationship between the accidents and Plaintiff's injuries, treatment and/or surgery, the amount in controversy is not readily discernable. Plaintiff argues that Defendants had 60 days to obtain such medical testimony but failed to, and without it, they cannot sustain their burden.[33]

### C. Defendants' Opposition to Remand

Reiterating the prior arguments urged in their Memorandum, Defendants argue that Plaintiff's Petition, on its face, alleges that Plaintiff's injuries were caused by the May accident. Defendants obtained Plaintiff's medical records, which show that, to date, Plaintiff's medical bills total $18,295 and Plaintiff has been recommended to undergo a costly orthopedic surgery. As such, Defendants contend that Plaintiff's medical expenses alone will exceed $75,000, without considering Plaintiff's claims for future medical expenses, past, past, present and future suffering, and lost income.[34] Defendants argue that, "[t]he fact that there was a preceding accident to which some or all of Plaintiff's damages may be attributable is a *controversy*. Thus, the amount established by Defendants is in controversy."[35] By virtue of the foregoing, Defendants contend that they have met their burden, which is to "produce evidence sufficient to constitute a preponderance showing that, regardless of the style or wording of the demand, the amount in controversy actually exceeds § 1332's jurisdictional threshold…."[36] Thus, Defendants argue that the onus is on Plaintiff to establish to "a legal certainty" that the amount in controversy is not met,

---

[33] R. Doc. 22-1, p. 5.
[34] R. Doc. 24, pp. 2-3 *citing* R. Docs. 20 and 12-1 (Petition).
[35] R. Doc. 24, p. 3.
[36] R. Doc. 24, p. 2, *citing Grant v. Chevron Philips Chemical Co.*, 309 F.3d 864, 869 (5th Cir. 2002).

8

either by (1) showing state procedural rules bind Plaintiff to the pleadings, or (2) filing a binding stipulation or affidavit[37] to that effect with the Petition.[38]

Defendants argue that Plaintiff's reliance on the allegation that no medical evidence exists to demonstrate that the "medicals" that were incurred after "the accident" are casually related to the May accident[39] is refuted by the fact that the medical records at issue were produced by Plaintiff in response to Defendants' discovery requests to Plaintiff for "evidence of the damages Plaintiff claimed were related to the subject accident."[40] Defendants argue that it is disingenuous for Plaintiff to offer the medical records as evidence of his damages from the May accident but then claim that Defendants have not proven that the injuries and medical expenses reflected in those records are related to the May accident.[41]

Finally, Defendants argue that they are not required to prove Plaintiff's case before the threshold jurisdictional question is answered. Rather, Defendants have met their burden based on Plaintiff's claims and the medical records that Plaintiff produced in support of his claims. On these grounds, Defendants contend that the Motion to Remand should be denied.[42]

### III. Law and Analysis

#### A. Legal Standards

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[43] When original jurisdiction is based on

---

[37] Defendants contend that they will agree to a remand if Plaintiff is willing to stipulate that the amount in controversy is less than $75,000 and Plaintiff's injuries were caused by the February accident. R. Doc. 24, p. 1.
[38] R. Doc. 24, p. 2, *citing Hoffman v. State Farm Fire & Casualty Company*, No. 15-309, 2015 WL 9581413 at **11-12 (M.D. La. Dec. 4, 2015) (internal citations omitted), *Grant*, 309 F.3d at 869, and *De Aguilar v. Boeing Co*., 47 F.3d 1404, 1412 (5th Cir. 1995).
[39] R. Doc. 24-1, p. 3.
[40] R. Doc. 24, p. 3 *citing* R. Doc. 24-1 (Plaintiff's responses to Defendants' discovery requests).
[41] R. Doc. 24, p. 3.
[42] R. Doc. 24, pp. 3-4.
[43] 28 U.S.C. § 1441(a).

9

diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[44] Remand is proper if at any time the court lacks subject matter jurisdiction.[45] The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[46]

If removal is sought on the basis of diversity jurisdiction, then "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy."[47] If, however, the "[s]tate practice ... does not permit demand for a specific sum" removal is proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [$75,000]."[48] In Louisiana state court, plaintiffs are generally prohibited from alleging a specific monetary amount of damages sought in their petitions.[49]

The burden of proof is on the removing defendant to establish that the amount in controversy has been satisfied.[50] The defendant may make this showing by either (1) demonstrating that it is facially apparent that the claims are likely above $75,000, or (2) setting forth facts in controversy that support a finding of the jurisdictional minimum.[51] "A showing only that the damages 'could well exceed' the jurisdictional amount or that there is 'some possibility' that the plaintiff 'could recover more' than the jurisdictional amount is insufficient to carry the removing defendant's burden."[52] Moreover, the parties "are not free simply to agree that the

---

[44] 28 U.S.C. § 1332(a)(1).
[45] *See* 28 U.S.C. § 1447(c).
[46] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).
[47] 28 U.S.C. § 1446(c)(2).
[48] 28 U.S.C. § 1446(c)(2)(A)(ii)–(B).
[49] La. Code Civ. P. art. 893(A)(1).
[50] *Luckett*, 171 F.3d at 298.
[51] *Id., and see Richard v. Georgia Gulf Lake Charles, LLC,* No. 07-0050, 2007 WL 2319804, *7 (W.D. La. Aug. 10, 2007) *citing De Aguilar,* 47 F.3d at 1412.
[52] *Flitter v. Walmart Stores, Inc.*, No. 09-236, 2009 WL 2136271, *3 (M.D. La. June 19, 2009) (*citing Allen,* 63 F.3d at 1336, and *De Aguilar,* 47 F.3d at 1411–12).

jurisdictional amount requirement has been satisfied, since parties cannot by stipulation or any other mechanism confer subject matter jurisdiction on the federal courts. Further, a federal court will not permit a defendant to consent to jurisdiction or to fail to challenge it."[53]

If the defendant can produce evidence sufficient to show by a preponderance, *i.e.*, summary judgment-type evidence, that the amount in controversy exceeds the jurisdictional threshold, the plaintiff can defeat diversity jurisdiction only by showing to a legal certainty that the amount in controversy does not exceed $75,000.[54] The jurisdictional facts that support removal must be judged at the time of removal.[55]

Since the parties are of diverse citizenship, which is undisputed, the only issue with regard to the Court's exercise of subject matter jurisdiction is whether the amount in controversy has been satisfied under 28 U.S.C. § 1332(a).

### B. It Is Not Facially Apparent From the Petition That the Amount in Controversy Is Met.

It is not facially apparent from the Petition that the amount in controversy is likely to exceed $75,000, which was the reason for the July 3, 2018 *sua sponte* order.[56] As explained above, Plaintiff's Petition only alleges boilerplate categories of damages including physical and mental pain and suffering, medical expenses and lost wages and only generally alleges injuries to his neck, back, and "body as a whole."[57] There is no allegation regarding Plaintiff's specific injuries, nor is there any information regarding claimed medical expenses or lost wages/earnings. "If the complaint is vague with regard to the types of injuries, medical expenses incurred, and future

---

[53] 14AA Fed. Prac. & Proc. Juris. § 3702 (4th ed.) (citations omitted).
[54] *See, e.g., Grant*, 309 F.3d at 869 and *De Aguilar*, 47 F.3d at 1412.
[55] *Kimble v. America First Ins. Co.*, No. 14-67, 2014 WL 1761556, at *2 (M.D. La. Apr. 28, 2014), *citing Gebbia,* 233 F.3d at 883 and *Womack v. National Union Fire Insurance Company,* No. 16-13127, 2016 WL 4728096, at *1 (E.D. La. Sept. 12, 2016).
[56] R. Doc. 3.
[57] R. Doc. 1-4, ¶¶ 8-9.

11

medical problems resulting from the incident, the court must conclude that it was not 'facially apparent' that the amount of damages would exceed $75,000."[58] Based on the foregoing, the amount in controversy is not facially apparent from the Petition. Defendants concede this point.[59]

Since it is not facially apparent from the Petition that Plaintiff's damages will exceed the federal jurisdictional amount, the Court must next consider whether Defendants have met their burden of proving, through summary judgment-type evidence, that the amount in controversy in this case is likely to exceed $75,000.

### C. Defendants Have Met Their Burden of Establishing that the Amount in Controversy Likely Exceeds $75,000, Exclusive of Interest and Costs

Based upon a review of the record, Defendants have established by a preponderance of the evidence that the amount in controversy is met. Defendants introduced medical records and invoices of Plaintiff's treatment, referenced in detail above,[60] which reflect that Plaintiff received

---

[58] *Shelton v. Hallmark Trucking Insurance Company*, No.17-1683, 2018 WL 1998341, at *2 (M.D. La. Mar. 27, 2018), *report and recommendation adopted sub nom, Shelton v. Hallmark Specialty Insurance Company,* No. 17-01683, 2018 WL 1997543 (M.D. La. Apr. 27, 2018), *citing Broadway v. Wal-Mart Stores, Inc.*, No. 00-1893, 2000 WL 1560167, at *2 (E.D. La. Oct. 18, 2000) (*citing Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 851 (5th Cir. 1999)). *See also Torres v. Mall of Louisiana, LLC*, No. 17-466, 2017 WL 6884347, at * 3 (M.D. La. Dec. 5, 2017) ("While Plaintiff seeks several items of damages, there is no indication of the amount in controversy related to her alleged damages. Thus, it is not facially apparent from the Petition that the amount in controversy is likely to exceed $75,000."); *Tucker v. Cincinnati Insurance Company*, No. 17-414, 2017 WL 5762436, at *3 (M.D. La. Aug. 24, 2017) (" 'Courts have routinely held that pleading general categories of damages, such as 'pain and suffering, disability, lost wages, loss of earning capacity, medical expenses, etc.,' without any indication of the amount of damages sought, does not provide sufficient information for the removing defendant to meet his burden of proving that the amount in controversy is satisfied under the 'facially apparent' test.' ") (*quoting Davis,* 2012 WL 278728, at *3 (collecting cases)).

[59] R. Doc. 12, p. 5.

[60] Defendants assert that Plaintiff cannot argue that the medical records are not related to the May accident because Plaintiff produced them in response to Defendants' requests for evidence of the damages Plaintiff claimed were related to the May accident. R. Doc. 24, p. 3. However, it is not clear that Plaintiff produced the medical records in response to that particular request. Notably, Defendants also requested production of "Copies of all of your health and medical records, hospital records, and any and all other records relating to your physical and mental health, examinations and treatment by any and all healthcare providers, whether before or after the accident giving rise to this suit," to which Plaintiff responded, in pertinent part: "…all documentation that is currently within the possession of the Plaintiff and which is responsive to this inquiry is attached hereto." *See* R. Doc. 24-1, p. 8, (Request for Production Number 2 and Response). Plaintiff's production appears to have been an *in globo* response to all of Defendants' requests and could have been in response to the referenced request and not specifically related to the May accident as Defendants characterize.

12

treatment before the May 2017 accident and has continued treatment with a chiropractor[61] and a neurosurgeon,[62] including MRIs,[63] steroid injections,[64] a branch block,[65] and pain medication for three bulging discs, two herniated discs, and annular tearing.[66] Plaintiff's cervical and lumbar pain has been attributed generally to both accidents, and Plaintiff's records indicate that Plaintiff did not have similar problems before the accidents.[67] In connection with treatment, Plaintiff has incurred $18,295 in medical bills[68] and Plaintiff is recommended for a cervical surgery that is estimated to cost $88,041.92.[69] According to Defendants' "Rule 1006 Medical Expense Summary,"[70] the $18,895 in medical expenses were all related to treatment that was provided after the May accident, and the records show that the surgery was recommended on March 15, 2018, also after the May accident.[71]

The Court is not persuaded by Plaintiff's argument that Defendants have not satisfied their burden because Defendants have not shown that the referenced expenses and/or surgery are related solely to the May accident.[72] The salient point is that Plaintiff claims he suffered "acute injuries to his neck, back, body as a whole"[73] in this suit. The medical records submitted by Defendants describe complaints of, and treatment for, such injuries after the May accident. Therefore, the referenced expenses and recommended surgery are amounts in controversy as to the May accident, as the need for them could have conceivably arisen because of the May accident and/or because of

---

[61] R. Doc. 20, pp. 89-91.
[62] *See, e.g.*, R. Doc. 20, pp. 10, 16, 25.
[63] R. Doc. 20, pp. 72-76.
[64] R. Doc. 20, pp. 77-79.
[65] R. Doc. 20, pp. 80-82.
[66] *See, e.g.,* R. Doc. 20, pp. 54-55.
[67] R. Doc. 20, pp. 54-55.
[68] R. Doc. 20, pp. 1-2.
[69] R. Doc. 20, p. 3.
[70] R. Doc. 20, pp. 1-2.
[71] R. Doc. 20, p. 3.
[72] There is no indication of whether Plaintiff filed suit in connection with the February accident.
[73] R. Doc. 1-4, p. 3.

a combination of both accidents.[74]    Accordingly, Defendants have presented sufficient summary judgment-type evidence to establish the amount in controversy.

### D. Plaintiff Has Failed to Show To A Legal Certainty that the Amount in Controversy Is Not Met

Since Defendants have submitted sufficient evidence to establish by a preponderance of the evidence that the amount in controversy is met, the burden shifts to Plaintiff to establish to a legal certainty that the jurisdictional threshold is not met.[75]  Plaintiff's arguments in support of remand focus solely on whether Defendants have met their burden and do not address this question. One way (though not the only way) that Plaintiff could have met his burden was to enter into a stipulation that his claims would not exceed $75,000.[76]  In their Opposition, Defendants invited Plaintiff to execute such a stipulation; however, Plaintiff elected not to (as is Plaintiff's prerogative).[77]  While Plaintiff's refusal to stipulate is not conclusive on its own, it is a factor for the Court to consider, particularly where Defendants have met their burden of establishing the

---

[74] There is no difference between this situation and the issue that is present in many personal injury cases where a plaintiff is alleged to have sustained a prior injury affecting the same areas of the body as the injury alleged in the suit. In those cases, there is usually a disagreement over causation, but the alleged damages are still in controversy.  *Cf. Fontenot v. Granite State Ins. Co.*, 08-1296, 2008 WL 4822283, at *5 (W.D. La. Nov. 3, 2008) (finding amount in controversy not satisfied where medical records indicated the treatment of the injuries sustained as a result of the accident that formed the basis of the suit was sporadic, infrequent and conservative and the pain was largely resolved with residual symptoms attributed solely to a prior accident and no surgery recommendation) and *Murray v. Oliver*, 05-1964, 2006 WL 220830, at *3  (W.D. La. Jan. 25, 2006) (finding amount in controversy not met where plaintiff submitted medical evidence to clarify that carpal tunnel syndrome diagnosis and surgical recommendation predated the accident that formed the basis of the suit).
[75] *See, e.g., Grant*, 309 F.3d at 869 and *De Aguilar*, 47 F.3d at 1412.
[76] *See, e.g., Leonard v. Sentry Select Insurance Company*, No. 15-675, 2016 WL 1393382, at *4 (M.D. La. Mar. 11, 2016), *report and recommendation adopted*, No. 15-675, 2016 WL 1369397 (M.D. La. Apr. 6, 2016).  *See also Hammel,* 2007 WL 519280, at *5 ("Here, the Court finds that plaintiffs have met their burden of showing with legal certainty that their claims are for less than $75,000. First, the Court may consider plaintiffs' post-removal affidavit because their complaint was ambiguous at the time of removal given that it merely stated that damages did not exceed $75,000. In this affidavit, plaintiffs have undoubtedly agreed to limit their damages by averring that 'neither our lawyer nor we will accept an amount that exceeds $75,000.'  As a result of this statement, the Court finds that plaintiffs have established, as a matter of law, that they are precluded from recovering any damages above this amount." (internal citations omitted)).
[77] R. Doc. 24, pp. 1, 4.

14

amount in controversy and Plaintiff then has the burden of establishing to a legal certainty that the amount in controversy is not met.[78]

Further, Plaintiff provided information which tends to show that his damages likely exceed the jurisdictional minimum. On January 23, 2019, Plaintiff's counsel sent an email to defense counsel (that appears to have been in response to a settlement offer directed to Plaintiff post-removal), which stated, in pertinent part, as follows: "I anticipate that Mr. Russell will have surgery to repair his spine. Accordingly, I cannot contemplate a figure under policy limits plus calculated costs of court at this time."[79] Plaintiff's Motion to Extend Discovery Deadline states that the Hallmark policy produced provides $100,000 per occurrence,[80] which exceeds the jurisdictional threshold. Further, the email indicates that Plaintiff is considering the recommended surgery, the cost of which alone exceeds the requisite amount in controversy. Whether or not Plaintiff has scheduled his surgery,[81] a surgical recommendation is often enough to satisfy the amount in controversy.[82] Accordingly, this evidence also militates against finding Plaintiff has met his burden of establishing to a legal certainty that the amount in controversy is not met.[83]

---

[78] *Shelton*, 2018 WL 1998341, at *3 (other citations omitted).

[79] R. Doc. 26-3, p. 1 (correspondence Plaintiff submitted in support of his Motion for Extension of Discovery Deadline).

[80] R. Doc. 26-1, pp. 1-2 and R. Doc. 26-5, p. 7. Plaintiff avers that this policy, which was produced in discovery, is a "bobtail" policy that provides coverage for a tractor operating without a trailer. *See* R. Doc. 26-1, pp. 1-2 and R. Doc. 26-5. Plaintiff further avers that the evidence indicates that Escobar was driving a tractor that was operating with a trailer, and so this policy may not be applicable. Thus, Plaintiff anticipates naming additional insurers and/or Plaintiff's uninsured-underinsured motorist carrier. R. Doc. 26-1, p. 2. In any case, to the extent Plaintiff seeks to add additional insurers and asserts claims for the policy limits on the applicable insurance policies which cover tractor-trailers, (*i.e.*, the only types of vehicles involved in the May accident), it appears likely that his claims exceed $75,000.

[81] *See* R. Doc. 22-1, p. 4 ("Mr. Russell has been recommended to undergo but not been scheduled for the recommended cervical fusion surgery.").

[82] Indeed, if Defendants had initially stated that there was a surgery recommendation for Plaintiff (which recommendation was made in March 2018, prior to removal, *see* R. Doc. 20, p. 3) in the Notice of Removal, supplemental briefing on the amount in controversy would likely not have been ordered. *See e.g., Robinson v. Kmart Corp.*, No. 11–12, 2011 WL 2790192, at *4, n. 4 (M.D. La. Apr. 28, 2011), *report and recommendation adopted,* 2011 WL 2937952 (M.D. La. July 14, 2011) ("Whether or not a herniated disc satisfies the amount in controversy often turns on whether surgery is recommended.").

[83] Although the January 2019 correspondence was after removal, post-removal information can be considered where, as here, the amount in controversy is ambiguous at the time of removal. This case is distinguishable from cases where courts have held that post-removal acts cannot be considered because in those cases the court found that the amount

15

In this case, Plaintiff's past treatment and medical expenses, recommendation for surgery, post-removal settlement demand for the policy limits of $100,000, stated intention to add additional insurance companies if necessary, and decision to not enter into a stipulation, all indicate that Plaintiff values his claims above $75,000.[84]  Accordingly, Plaintiff has not met his burden of establishing to a legal certainty that his damages do not exceed $75,000.

## IV. Recommendation

Accordingly, **IT IS RECOMMENDED** that the Motion to Remand filed by Plaintiff James R. Russell be **DENIED.  IT IS FURTHER RECOMMENDED** that, if this Report and Recommendation is adopted, the case be referred to the undersigned for a scheduling conference.

Signed in Baton Rouge, Louisiana, on June 3, 2019.

*(signature)*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

in controversy had been established, *i.e.*, that it was not ambiguous.  Compare *Pollet v. Sears Roebuck and Company*, 46 Fed.Appx. 226, at *1 (5th Cir. 2002) (refusing to consider post-removal settlement demands for less than the jurisdictional amount where it was facially apparent that plaintiff's damages exceeded the amount in controversy) with *Hammel v. State Farm Fire and Cas. Co*., 06-7470, 2007 WL 519280, at *2 (E.D. La. Feb. 14, 2007) (when post-removal information is considered solely to clarify a previously ambiguous petition "the court is still examining the jurisdictional facts as of the time the case is removed, but the court is considering information submitted after removal.").  Also, as noted above, the surgical recommendation was prior to removal.

[84] The Fifth Circuit has cautioned that "[D]efendants must be protected from 'plaintiffs who seek to manipulate their state pleadings to avoid federal court while retaining the possibility of recovering greater damages in state court following remand' and that this court "'adamantly'" seeks to prevent plaintiffs who manipulate pleadings in such fashion " 'from being able to destroy the jurisdictional choice that Congress intended to afford a defendant in the removal statute.' " *Pollet*, 46 F. App'x 226 at *2.