# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

JAMES R. RUSSELL                                    CIVIL ACTION

VERSUS

JOSE F. BONILLA ESCOBAR, ET AL.              NO. 18-00660-BAJ-EWD

## RULING AND ORDER

Before the Court is Defendant United Specialty Insurance Company's Motion for Summary Judgment (Doc. 118). The Motion is opposed. (Doc. 129). United filed a Reply Brief. (Doc. 133). For the reasons stated herein, United's Motion is **GRANTED**.

## I.    BACKGROUND

### A. ALLEGED FACTS

The instant dispute arises out of an alleged motor vehicle collision between Plaintiff and Jose F. Bonilla Escobar on May 17, 2017. (Doc. 63, ¶¶ 4–8; Doc. 143, p. 6). Plaintiff alleges that Escobar's truck, a 2006 Freightliner tractor-semitrailer, sideswiped Plaintiff's truck, a 2014 International tractor-semitrailer. (Doc. 63, ¶¶ 4–7). Plaintiff seeks damages resulting from this alleged accident. (Doc. 63).

Remaining Defendants in this matter include Freightline Express Corp., United Specialty Insurance Company, and Liberty Mutual Fire Insurance Company.[1] (*See id.*; Doc. 141). First, Plaintiff alleges that Freightline is Escobar's statutory employer and is therefore vicariously liable for Escobar's negligence at the

---

[1] Escobar and his alleged insurers are no longer parties to this suit.

1

time of the collision. (Doc. 63, ¶¶ 11–13). Second, Plaintiff alleges that United, as Freightline's insurer, must pay damages caused by Escobar's negligence. (*Id.* at ¶¶ 16–17). Plaintiff alleges that Escobar was covered by United's Policy issued to Freightline. (*Id.* at ¶ 17). Finally, Plaintiff alleges that Liberty, as Plaintiff's UM/UIM insurer, is liable to Plaintiff to the extent that remaining liability insurance limits are insufficient to compensate Plaintiff for his damages. (*Id.* at ¶ 19).

United now moves for summary judgment, arguing that its policy does not provide the coverage that Plaintiff seeks. (Doc. 118).

### B. PROCEDURAL HISTORY

Plaintiff initially filed suit in the 19th Judicial District Court, Parish of East Baton Rouge. (Doc. 1-4). This matter was removed to the Court based on diversity jurisdiction, 28 U.S.C. § 1332. (Doc. 1). Plaintiff twice sought leave to file Amended Complaints. (Doc. 39; Doc. 40; Doc. 62; Doc. 63). The Second Amended Complaint is now the operative pleading in this matter. (Doc. 63).

## II.    LEGAL STANDARD

A court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on motions for summary judgment, courts are required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.

2

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Coleman v. Hous. Indep. School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

To survive summary judgment, however, the nonmoving party must do more than allege an issue of material fact: "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations and quotation marks omitted). A party that fails to present competent evidence opposing a motion for summary judgment risks dismissal on this basis alone. *E.g., Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 536 (E.D. Tex. 2000) ("Plaintiff produced no genuine issue of material fact to prevent the granting of Defendant's Motion, and therefore, the Court could grant Defendant's Motion for Summary Judgment on this basis alone.").

## III.  DISCUSSION

### A. Undisputed Facts

Escobar owned the truck he was driving and the trailer he was pulling at the time of the alleged accident.[2] (Doc. 118-5, ¶ 1). Escobar leased the truck and trailer

---

[2] United filed a Statement of Undisputed Facts in support of its Motion, supported by record

to Freightline. (*Id.* at ¶ 2). United issued a commercial auto policy to Freightline ("United Policy"), with coverage effective dates of March 6, 2017, through March 6, 2018. (*Id.* at ¶ 3). Under the United Policy, United agreed to:

> [P]ay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

(*Id.* at ¶ 4).

The United Policy limited liability coverage to "Covered Autos" designated by Symbol "67," defined as:

> Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Auto Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three).

(*Id.* at ¶ 5). There are three "Covered Autos" scheduled on the United Policy, none of which were involved in the alleged accident. (*Id.* at ¶¶ 6–7). Escobar's truck was not scheduled on the United Policy on the date of the alleged accident. (*Id.* at ¶ 7).

### B. Analysis

United argues that summary judgment is warranted in its favor because the United Policy does not provide coverage for any of Plaintiff's claims. (Doc. 118, p. 1).

---

evidence, as required by Local Civil Rule 56. Plaintiff failed to oppose these facts. (*See generally* Doc. 129). Local Civil Rule 56(f) provides that "[f]acts contained in a supporting [] statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." The Court has repeatedly warned that its Local Rules carry the force of law, that parties appearing before the Court are charged with knowledge of its Local Rules, and that a party that "fails to comply with the Local Rules does so at his own peril." *Combs v. Exxon Mobil Corp.*, No. 18-cv-00459, 2020 WL 5121362, at *6 (M.D. La. Aug. 31, 2020) (Jackson, J.). Accordingly, United's Statement of Undisputed Facts, unopposed by Plaintiff and supported by record evidence, are deemed admitted. (Doc. 118-5).

4

Specifically, United asserts that its Policy does not provide coverage because Escobar's truck was not scheduled as a "Covered Auto." (Doc. 118-6, p. 1). United asks the Court to apply the clear and unambiguous language of the Policy to find that the United Policy only provides coverage to "Covered Autos." (*Id.* at p. 4).

Plaintiff responds that because Escobar was a named insured under the United Policy, the fact that he was operating an unscheduled auto is of "no consequence" to the question of coverage under the MCS-90 Endorsement included in the United Policy. (Doc. 129, p. 8). Plaintiff argues that the MCS-90 Endorsement requires United to pay "any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980, regardless of whether or not each motor vehicle is specifically described in the policy . . ." (*Id.* at p. 7). In short, Plaintiff relies on the applicability of the MCS-90 Endorsement included in the United Policy to seek payment from United.

"The MCS-90 [endorsement] is a federally mandated policy endorsement required to ensure a motor carrier's compliance with federal minimum levels of financial responsibility for the transportation of property by a motor carrier within the United States." *Cutrer v. TWT Transp., L.L.C.*, 485 F. Supp. 3d 677, 683–84 (M.D. La. 2020) (citing *Canal Ins. Co. v. Coleman*, 625 F.3d 244 (5th Cir. 2010)). The MCS–90 endorsement must be attached to any liability policy issued to for-hire motor carriers operating motor vehicles transporting property in interstate commerce.

5

*Coleman*, 625 F.3d at 247 (citing 49 C.F.R. §§ 387.3, 387.7). The endorsement creates a suretyship, which obligates an insurer to pay certain judgments against the insured arising from interstate commerce activities, even though the insurance contract would have otherwise excluded coverage. *Coleman*, 625 F.3d at 247 (internal citations omitted). Whether the MCS-90 endorsement covers a given accident is a matter of federal law. *Cutrer*, 485 F. Supp. 3d at 684 (citing *Coleman*, 625 F.3d at 244).

To determine the scope of coverage provided by the MCS-90, the United States Court of Appeals for the Fifth Circuit directs the Court to first look to the plain language of the MCS-Endorsement. Here, the MCS-90 Endorsement provides in pertinent part:

> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Section 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirement of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.

(Doc. 118-4, p. 63). In short, the MCS-90 Endorsement requires United to pay any final judgment recovered against Freightliner for "public liability" resulting from the negligent operation, maintenance, or use of "motor vehicles subject to the financial

responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980."
(*Id.*); *see also Coleman*, 625 F.3d at 248. Therefore, the Court must determine whether
Escobar's truck was "subject to the financial responsibility requirements of
Sections 29 and 30 of the Motor Carrier Act of 1980" to determine whether the
MCS-90 applies.[3] (Doc. 118-4, p. 63); *see also Coleman*, 625 F.3d at 248.

Looking to the relevant portion of the Motor Carrier Act to determine whether
Escobar's truck was subject to its financial responsibility requirements, Section 30
provides:

> The Secretary of Transportation shall prescribe regulations to require
> minimum levels of financial responsibility sufficient to satisfy liability
> amounts established by the Secretary covering public liability, property
> damage, and environmental restoration for the transportation of
> property by motor carrier or motor private carrier (as such terms are
> defined in section 13102 of this title) in the United States between a
> place in a State and—
>
> (A) a place in another State;
>
> (B) another place in the same State through a place outside of that State;
>     or
>
> (C) a place outside the United States.

49 U.S.C. § 31139(b); *see also Coleman*, 625 F.3d at 248–49.

In interpreting Section 30 and a similar MCS-90 endorsement, the Fifth
Circuit has held that the endorsement covered vehicles "*only when they are presently
engaged in the transportation of property in interstate commerce*," and explained that

---

[3] The Court assumes *arguendo* that Escobar was negligent in the operation, maintenance, or
use of his truck for the purposes of summary judgment only.

this is a "trip-specific" analysis. *Id.* at 249, 253 (emphasis added). The Fifth Circuit reasoned:

> [T]he MCS–90 applies to vehicles subject to § 30 of the Motor Carrier Act. Section 30 requires minimum levels of financial responsibility, which must be sufficient to "satisfy liability . . . for the transportation of property in interstate commerce." Thus, the MCS–90 is a way of conforming with statutory minimum-financial-responsibility requirements. **And because those requirements exist to "satisfy liability . . . for the transportation of property," it follows that the MCS–90 must cover liabilities "for the transportation of property." Nothing in the MCS-90's text indicates that it covers other kinds of liabilities, *i.e.*, liabilities incurred outside of the transportation of property.**

*Id.* at 249 (emphasis added). Accordingly, the MCS-90 Endorsement applies in this case if Escobar's truck was "presently engaged in the transportation of property in interstate commerce" at the time of the alleged accident. *Id.* at 249, 253 ("the 'transportation of property' limitation applies on a trip-specific basis.").

The term "transportation" includes:

> (A) a motor vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and

> (B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property.

49 U.S.C. § 13102 (Section 30 of the Motor Carrier Act indicates that its terms are to be read as "defined in section 13102 of this title."); *see also* Section 31139(b); *see also Coleman*, 625 F.3d at 252. The Fifth Circuit has noted the broad nature of the definition of "transportation." *Id.* at 254.

8

The Court has previously addressed the question of whether a vehicle was engaged in transportation of property in interstate commerce to determine whether a similar MCS-90 endorsement applied in *Cutrer v. TWT Transport, L.L.C.* 485 F. Supp. 3d 677, 685 (M.D. La. 2020). Holding that the MCS-90 endorsement was inapplicable because the vehicle was not engaged in transportation of property in interstate commerce, the Court declared:

> [T]he main fact question informing the applicability of the MCS-90 endorsement under the Fifth Circuit test: at the time of the accident, was the [vehicle] being used for-hire [] to transport the property of a third party in interstate commerce. Here, the record evidence provides a single answer: no.

*Id.* at 685. The Court reasoned that because there was no contract for work on the date of the accident, the only property being moved belonged to the driver and was being moved for personal use, and no compensation was received from a third party, the MCS-90 endorsement did not apply. *Id.* Here, as in *Cutrer*, the record evidence leads to the same conclusion. *See id.*

United offers Escobar's deposition testimony to support its argument that Escobar was not transporting property of a third party in interstate commerce at the time of the alleged accident, but instead, was on a personal mission to get his trailer repaired. (Doc. 133, p. 4–6). Escobar testified that at the time of the alleged accident, Escobar had no load in his truck, was on a personal mission, was not doing anything employment related, and decided on his own to travel to Florida to get his trailer repaired. (*Id.* at p. 4–5 (citing Doc. 118-2, 47:2–10, 24:5–7, 24:17–21)). Escobar further

9

testified that Freightline did not instruct Escobar to get his trailer repaired or to travel to Florida to get his trailer repaired. (*Id.* at p. 4 (citing Doc. 118-2, 24:7–21)).

In opposition, Plaintiff offers no evidence whatsoever to indicate that Escobar was presently engaged in the transportation of property in interstate commerce at the time of the alleged accident. (*See generally* Doc. 129). Rather, Plaintiff argues that the MCS-90 Endorsement is applicable because United denied coverage and because no other insurer is available to satisfy a judgment rendered against Freightline. (*Id.* at p. 5).

The Court has repeatedly admonished that "summary judgment is about evidence, and a party that fails to direct the Court's attention to any evidence supporting his claims cannot carry his burden of showing a genuine, material dispute (or lack thereof)." *Mitchell v. Diamond Plastics Corp.*, No. 18-cv-00919-BAJ-RLB, 2021 WL 1234520, at *1 (M.D. La. Mar. 31, 2021) (Jackson, J.) (emphasis in original, quotation marks omitted); *see also Gerkin v. McMurdo*, No. 19-cv-00249, 2021 WL 664840, at *1 (M.D. La. Feb. 19, 2021) (Jackson, J.) *Combs v. Exxon Mobil Corp.*, No. 18-cv-00459, 2020 WL 5121362, at *6 (M.D. La. Aug. 31, 2020) (Jackson, J.). To survive summary judgment, the nonmoving party must do more than allege an issue of material fact: "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001) (citing *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 324 (1986)). A party that fails to present competent evidence opposing a motion for summary judgment risks dismissal on this basis alone. *E.g.*, *Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 536 (E.D. Tex. 2000) ("Plaintiff produced no genuine issue of material fact to prevent the granting of Defendant's Motion, and therefore, the Court could grant Defendant's Motion for Summary Judgment on this basis alone."). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations and quotation marks omitted).

Facing no competent record evidence to controvert United's argument and summary judgment evidence indicating that Escobar was on a personal mission at the time of the alleged accident, the Court has nothing before it to find that Escobar was "presently engaged in the transportation of property in interstate commerce" when the accident occurred. Accordingly, the MCS-90 Endorsement does not apply in this case.[4] *See Coleman*, 625 F.3d at 252 ("Many other courts have similarly stated the MCS–90's purpose as protecting the public from vehicles while they are being used for the transportation of property in interstate commerce."). Because Plaintiff

---

[4] To the extent Plaintiff argues that the MCS-90 Endorsement should apply "regardless of whether or not each motor vehicle is specifically described in the policy," the Fifth Circuit has rejected this argument and held that the "regardless" language contained in the endorsement does not mean that the endorsement *always* applies. *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 253 (5th Cir. 2010). Rather, "the MCS–90 applies to vehicles subject to the Motor Carrier Act's financial-responsibility requirements. *For those vehicles*, and only for those vehicles, the MCS–90 provides coverage 'regardless of whether or not each motor vehicle is specifically described in the policy . . .'" *Id.* Because Escobar's vehicle was not "presently engaged in the transportation of property in interstate commerce," it was not subject to the Motor Carrier Act's financial-responsibility requirements.

relies on the applicability of the MCS-90 Endorsement to obtain coverage from United, summary judgment is granted in United's favor.

IV.    **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendant United Specialty Insurance Company's **Motion for Summary Judgment (Doc. 118) is GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant United Specialty Insurance Company are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that United Specialty Insurance Company's **Motion to Adopt Freightline Express Corp.'s Motion In Limine, Memorandum In Support, And Exhibits (Doc. 139) is DENIED AS MOOT.**

Baton Rouge, Louisiana, this ___13th___ day of January 2022

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**